IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CENTRAL PLATTE NATURAL RESOURCES DISTRICT, | ) ) ) | |
| Plaintiff, | ) ) | 4:09CV3198 |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, and FARM SERVICE AGENCY, | ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |

On January 11, 2010, Plaintiff Central Platte Natural Resources District (CPNRD) filed an amended complaint against Defendants United States Department of Agriculture (USDA) and Farm Service Agency (FSA), alleging violations of the Freedom of Information Act (FOIA), 5 U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq. (Filing 17.) The defendants have moved to dismiss the plaintiff's Privacy Act and APA claims and have moved for summary judgment on the plaintiff's FOIA claim. (See filing 22; see also filing 24 at 2.) My analysis of the defendants' motion follows.

## I.   BACKGROUND[1]

---

[1] I note preliminarily that in opposition to the defendants' motion, the plaintiff has submitted the declaration of Thomas R. Wilmoth, who states that he "obtained the materials attached [to his declaration] . . . from governmental websites, including the U.S. Government Accountability Office, the Farm Service Agency, Congressional Research Service, and the National Academy of Science, by conducting electronic searches of the 'World Wide Web' via the 'Google' search engine." (Pl.'s Index, filing 26, Wilmouth Decl. ¶ 1.) The defendants object to my consideration of these materials, arguing that "Wilmouth does not set forth any personal knowledge regarding the documents attached to his declaration," and that the documents "would be inadmissible hearsay, at best." (Filing 36 at 12.) I agree with the defendants that Wilmoth has not shown that he has personal knowledge of these documents or their contents. Furthermore,

1

CPNRD is a political subdivision of the State of Nebraska and is responsible for "managing natural resources and carrying out various programs for the conservation, protection, development, and management of the State's natural resources." (See Am. Compl., filing 17, ¶ 5.) It is authorized by statute to "cooperate with or to enter into agreements with and . . . to furnish financial or other aid to any cooperator, any agency, governmental or otherwise, or any owner or occupier of lands within the district for the carrying out of projects for benefit of the district." (Id. ¶ 8 (quoting Neb. Rev. Stat. § 2-3235).)

USDA is a department within the executive branch of the United States Government, and FSA is a sub-agency within the USDA. (See Am. Compl., filing 17, ¶¶ 10-11.) FSA's goals include "stabilizing farm income," "helping farmers conserve land and water resources," "providing credit to new or disadvantaged farmers and ranchers," and "helping farm operations recover from the effects of disaster." (Defs.' Index, filing 23, Wieland Decl. ¶ 22.) To accomplish these goals, FSA administers "programs that offer financial assistance, either through direct payments, or by offering farm ownership, direct operating, or emergency loans to agricultural producers" and "conservation programs that help owners of agricultural land protect environmentally sensitive lands, or . . . rehabilitate lands that have been damaged by natural disasters." (Id. ¶ 23.)

---

setting aside the question whether the exhibits accompanying the affidavit were properly authenticated (I note in passing that the affidavit does not state when the Google searches were conducted, nor does it state that the exhibits were found at a specific internet address and are presented, without alteration, as they are or were maintained at that particular address on the date of the search), the documents contain out-of-court statements offered to establish the truth of certain facts, and no foundation has been laid to show that these statements might be admissible hearsay. Such statements "may not be used to . . . defeat a motion for summary judgment." Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005). Therefore, I shall not consider the statements made in these documents, or the factual assertions based upon these documents, in my analysis of the pending motion–except insofar as the defendants have expressly admitted such factual assertions.

I also note that, to the extent that a party's affidavits offer legal conclusions about the issues raised in this case, they shall be disregarded. E.g. Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 982 (8th Cir. 2004). (See also filing 25 at 24-45 (noting that portions of the Wieland Declaration state legal opinions).)

In 2003, CPNRD entered into a Cooperative Agreement with "the USDA, Natural Resources Conservation Service [(NRCS)]" to "[i]mplement management systems designed to address water quality concerns by improving technical assistance to land users within the CPNRD." (Pl.'s Index, filing 26, Ex. 7 at AR000386.) The agreement states, "The CPNRD will provide staff and resources to assist the NRCS with Geographic Information Systems (GIS) technology support, services, and products as it provides technical assistance in carrying out local, state, and federal conservation programs." (Id.)[2] Over the course of approximately three years, a "GIS employee" provided by CPNRD "work[ed] with NRCS and FSA to develop a GIS database." (Pl.'s Index, filing 26, Bishop Decl. ¶ 12.) The employee "convert[ed] paper data to a geospatial database" and "helped train NRCS and FSA employees to use the GIS software (ArcView) that was provided for them." (Id. ¶¶ 13-14.) "This assistance was provided at no cost to the USDA agencies." (Id. ¶ 14.)

CPNRD states that "GIS Data are important in modern resource management programs." (Pl.'s Index, filing 26, Bishop Decl., ¶ 35.) More specifically, the data assist CPNRD in "[c]ertifying the scale and location of irrigated acreage within CPNRD as required by State law," "[e]nsuring individuals within CPNRD are complying with State and Federal obligations," and "[c]onfirming that CPNRD and USDA agencies are properly administering the programs they are charged with administering and that no fraudulent reporting is ongoing." (Id.)

As part of a pilot program in Nebraska and seven other states, FSA used "Land Use Application software to compile annual acreage reports in . . . geospatial format." (Defs.' Index, filing 23, Wieland Decl. ¶ 29.) This software allowed FSA "to compile the crop acreage information that is reported annually by agricultural producers and landowners and create a land use data layer that is then linked to a point on the earth." (Id. ¶ 28.) Evidently, the Land Use Application software is used in connection with the GIS to compile reports in geospatial format–though the relationship between the Land Use Application software and the GIS is not clearly explained. (See id. ¶¶ 26-29.)

---

[2] "GIS is a computer system that can assemble, store, manipulate, and display spatial, or geographically referenced, information. A GIS system also includes the data that goes into the system. The GIS technology, combined with aerial photographs and satellite imagery, is helping FSA staff more efficiently measure land features, identify crop types, and establish maps for farm records. Computer-generated maps interact with databases that store information about land." (Defs.' Index, filing 23, Wieland Decl. ¶ 27.)

3

In Nebraska, the Land Use Application software was used "at the discretion of individual FSA county offices." (Id. ¶ 29.) Thus, geospatial reports were not necessarily generated uniformly (or at all) in each county throughout the state. (See id.) It is not clear when the pilot program began; however, "on November 27, 2009, FSA announced that, due to security issues, the Land Use Application Pilot Program would be discontinued and the application software would not be available after December 31, 2009." (Id. ¶ 30.)

On or about July 3, 2008, CPNRD submitted to FSA a request for information "pursuant to the Privacy Act" and two of the Act's "Routine Use Exceptions." (Defs.' Index, filing 23, Ex. A, at AR000001.)[3]  In its request, CPNRD asked FSA to produce information "contained in FSA's Geographic Information System ('GIS')" about farmland located in Buffalo, Custer, Dawson, Frontier, Hall, Hamilton, Howard, Merrick, Nance, Platte, and Polk Counties. (Id.)  More specifically, CPNRD sought "the following information . . . for each farm within the aforementioned counties: (1) The farm number, (2) tract number, (3) owner and operator name and address, (4) number of acres and crop types 'certified' by the FSA, and (5) whether or not the lands were irrigated." (Id.)[4]

The information sought by CPNRD "is contained in an FSA system of records known as USDA/FSA-2, Farm Records File (Automated)." (Defs.' Index, filing 23, Wieland Decl. ¶ 46 (citing 72 Fed. Reg. 70559, 70563 (Dec. 12, 2007)).)  Records in this system may be disclosed pursuant to 25 published "routine uses" that "identify individuals, groups, and entities to which the information may be disclosed."  72 Fed. Reg. 70559, 70560 (Dec. 12, 2007).  In this case, CPNRD sought disclosure of the aforementioned information under routine uses 2 and 21. (Defs.' Index, filing 23, Ex. A, at AR000001.)  Routine use 2 allows disclosure "[t]o the appropriate agency, whether

---

[3] I note in passing that the records submitted by the plaintiff include an identical request dated June 3, 2008. (Compare Pl.'s Index, filing 26, Ex. 24 with Defs.' Index, filing 23, Ex. A.)

[4] In its brief and supporting exhibits, CPNRD explains that its effort to obtain this data truly began with a request filed on December 30, 2005, (see, e.g., Pl.'s Index, filing 26, Bishop Decl., ¶ 20; Pl.'s Index, filing 26, Ex. 16), and it summarizes in good detail the events that transpired between that date and the filing of its July 3, 2008, request, (see Pl.'s Index, filing 26, Bishop Decl., ¶¶ 21-31).  I have reviewed these facts, though I shall not recount them here for reasons that will be explained below.

4

Federal, State, local, or foreign charged with the responsibility of investigating or prosecuting a violation of law, or of enforcing or implementing a statute, rule, regulation, or order issued pursuant thereto, of any records within this system when information available indicates a violation or potential violation of law, whether civil, criminal or regulatory in nature and whether arising by general statute or particular program statute, or by rule, regulation, or order issued pursuant thereto." 72 Fed. Reg. 70559, 70563 (Dec. 12, 2007).  Routine use 21 states,

> Records contained in this system may be disclosed . . . [t]o cooperating Federal, State, and local agencies' employees who are qualified to implement conservation programs.  The specific information to be disclosed to the cooperating Federal, State, and local agencies employees consists of:
>
> –Producer name/address/tax identification number
>
> –Digital imagery, including Common Land Unit (CLU) boundaries, calculated acreage, and farm, tract, and filed identifiers.
>
> –Conservation Reserve Program (CRP) data.
>
> –Highly erodible land (HEL) delineations and data.
>
> –Conservation Producer payment history.
>
> –Wetland classifications.

Id.

In a letter dated August 19, 2008, CPNRD submitted to the FSA a second request for the same GIS data that it sought in its July 3, 2008, request.  (Defs.' Index, filing 23, Ex. B, at AR000024; Am. Compl., filing 17, ¶ 27.)  At the time of the August 19, 2008, request, FSA had not yet responded to the July 3, 2008, request.  (Am. Compl., filing 17, ¶¶ 26-27.)  CPNRD's request of August 19, 2008, was "made pursuant to the [FOIA], 5 U.S.C. § 552, and the [FSA's] implementing regulations at 7 C.F.R. Part 798." (Defs.' Index, filing 23, Ex. B, at AR000024.)

In its letters of July 3, 2008, and August 19, 2008, CPNRD addressed the implications of section 1619(b)(2) of the Food, Conservation, and Energy Act of 2008 (the 2008 Farm Bill), 7 U.S.C. § 8791(b)(2).  (See Defs.' Index, filing 23, Ex. A., at AR000003-4; id., Ex. B, at AR000024-25.)  The August 19, 2008, letter states,

5

We do recognize that Section 1619(b)(2) of the Food, Conservation, and Energy Act of 2008, which took effect on May 22, 2008, now prohibits release of the following: "(A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department; or (B) geospatial information otherwise maintained by the Secretary about agricultural land or operations for which [such] information . . . is provided." To the extent this law applies to the specific information CPNRD seeks here, that information can continue to be shared with cooperators providing technical or financial assistance with respect to the agricultural operation, agricultural land, or farming or conservation practices" provided the information will not be subsequently disclosed. See Section 1619(b)(3)([A]). As you know, CPNRD is a cooperator in multiple FSA & NRCS programs.

(See Defs.' Index, filing 23, Ex. B, at AR000024-25.)

The letters include other justifications for CPNRD's records requests (apart from its status as a cooperator). For instance, in support of its argument that the GIS data ought to be disclosed pursuant to routine use 2, CPNRD's letter of July 3 includes examples of "false or misleading statements" about irrigated crop land that "suggest a potential violation of State and/or Federal law." (Defs.' Index, filing 23, Ex. A, at AR000001.) Also, the letter of August 19 states, "CPNRD has no commercial interest in the information sought. CPNRD intends to utilize the information solely in furtherance of its cooperative efforts with FSA and NRCS, its soil and water conservation obligations under State law and . . . [its] implementation of the 3 State/DOI Platte River Cooperative Agreement." (Id. at AR000025.)

In a letter dated June 25, 2009, the USDA denied CPNRD's requests on the ground that the information requested was prohibited from disclosure under FOIA Exemption 3, 5 U.S.C. § 552(b)(3),[5] and section 1619(b)(2) of the 2008 Farm Bill, 7 U.S.C. § 8791(b)(2). (See Defs.' Index, filing 23, Ex. C, at AR000026.) In so doing, it determined that CPNRD's requests did not meet the requirements of section 1619(b)(3)(A) of the 2008 Farm Bill, which states, in pertinent part, as follows:

---

[5] FOIA Exemption 3 states, in pertinent part, "This section does not apply to matters that are . . . specifically exempted from disclosure by statute (other than section 552b of this title), if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . ." 5 U.S.C. § 552(b)(3)(A).

     (3) Authorized disclosures
          (A) Limited release of information
          . . . [T]he Secretary may release or disclose the information to a person or Federal, State, local, or tribal agency working in cooperation with the Secretary in any Department program--
               (i) when providing technical or other financial assistance with respect to the agricultural operation, agricultural land, or farming or conservation practices . . . .

7 U.S.C. § 8791(b)(3)(A)(i).  (See also Defs.' Index, filing 23, Ex. C, at AR000026-27.)

On or about July 17, 2009, CPNRD appealed the denial of its requests.  (See Defs.' Index, filing 23, Ex. D, at AR000031-110.)  On August 10, 2009, the FSA Appeals and Litigation Staff (ALS), which was responsible for processing CPNRD's appeal, "informed the Nebraska State FSA Office that searches were required to be conducted in the 11 Nebraska County FSA Offices identified by CPNRD in order to locate 2008 crop year crop acreage reports compiled and maintained in the geospatial format." (Defs.' Index, filing 23, Wieland Decl. ¶¶ 13-14.)  On August 19 and 20, 2009, FSA County Executive Directors in Custer, Dawson, Hall, Hamilton, Howard, and Merrick Counties reported "that 2008 and 2009 crop year acreage reports filed by agricultural producers and landowners were not compiled and maintained in the geospatial format." (Defs.' Index, filing 23, Wieland Decl. ¶ 15; id., Ex. E, at AR000111-116.)  Instead, for these counties "[t]he specific crop acreage information responsive to CPNRD's request was compiled and . . . maintained using FSA's non-geospatial . . . reporting software application." (Defs.' Index, filing 23, Wieland Decl. ¶ 15.)  For the five remaining counties named in CPNRD's request, "2008 crop year crop acreage records were available in the geospatial format." (Defs.' Index, filing 23, Wieland Decl. ¶ 16.)  Specifically, "Buffalo County located geospatial crop acreage records for 13 farms; Frontier County located records for 3 farms; Nance County located records for 1 farm; Polk county located records for 33 farms[, and] Platte County located records for 80 farms." (Id.)  CPNRD has not claimed that this record search was inadequate, unreasonable, or otherwise deficient.  Also, it is undisputed that the geospatial records that are responsive to CPNRD's request "reveal information about individual agricultural operations, farming or conservation practices, and the land, that was directly provided to FSA by agricultural producers and owners of agricultural land in order to participate in an FSA program." (Defs.' Index, filing 23, Wieland Decl. ¶ 21.)  The Nebraska State FSA Office forwarded

to ALS "a sample of the available geospatial data . . . for one farm located in Buffalo County." (Defs.' Index, filing 23, Wieland Decl. ¶ 16.)

On or about November 16, 2009, FSA issued a final determination denying CPNRD's appeal. (Defs.' Index, filing 23, Wieland Decl. ¶ 17.)  In its determination, the FSA notified CPNRD that there were no responsive records in six of the eleven counties specified in the requests, and that geospatial records pertaining to the remaining five counties would not be disclosed in light of FOIA Exemption 3 and section 1619(b)(2) of the 2008 Farm Bill.  (See Defs.' Index, filing 23, Wieland Decl. ¶ 17; see also Defs.' Index, filing 23, Ex. F, at AR000117-120.)  It also concluded that it would not exercise its discretion to disclose the available geospatial data pursuant to section 1619(b)(3)(A), explaining that in its view, CPNRD had requested information that was inconsistent with its role as a "cooperator" within the meaning of that section.  (Defs.' Index, filing 23, Ex. F, at AR000120-121.)  An examination of FSA's reasoning on this point is in order.

FSA noted first that CPNRD is indeed a cooperator "that provide[s] both technical and financial assistance to FSA in order to administer the Conservation Reserve Enhancement Program (CREP),"[6] and it explained that as a part the appeal process, it "reviewed two separate agreements between the Commodity Credit Corporation (CCC) and the State of Nebraska concerning the implementation of two CREP areas."  (Id. at AR000120.)  The first of these CREP projects is the subject of a Memorandum of Agreement (MOA) entered into on December 11, 2002, by the CCC and the State of Nebraska.  (Id.; see also Defs.' Index, filing 23, Wieland Decl. ¶ 36.)  This project, which is referred to as the Central Basins CREP, includes agricultural land in Buffalo, Dawson, Hall, Hamilton, Merrick, Nance, Platte, and Polk Counties that lies within the boundaries of CPNRD. (Defs.' Index, filing 23, Wieland Decl. ¶ 36; id., Ex. F, at AR000120.)  The MOA for the Central Basins CREP states that USDA will provide "appropriate data" to the State of Nebraska in accordance with FOIA and other applicable statutes "to facilitate State monitoring efforts."  (Defs.' Index, filing 23, Wieland Decl. ¶ 36; id., Ex. F, at AR000120.  See also Defs.' Index, filing 23, Ex.

---

[6] The CREP is "a voluntary program that provides for retiring eligible land from agricultural production and helping producers and landowners protect environmentally sensitive land, decrease erosion, restore wildlife habitat, and safeguard ground and surface water."  (Defs.' Index, filing 23, Wieland Decl. ¶ 35.)

L, at AR000188.)  The second CREP project, known as the Platte-Republican CREP, is the subject of a MOA entered into on March 19, 2005, by the CCC and the State of Nebraska.  (Defs.' Index, filing 23, Wieland Decl. ¶ 37; id., Ex. F, at AR000120.)  The Platte-Republican CREP includes land in Buffalo, Dawson, and Frontier Counties that also lies within CPNRD.  (Defs.' Index, filing 23, Wieland Decl. ¶ 37.  But see id., Ex. F, at AR000120 (indicating that only Buffalo and Dawson Counties include land that falls within both the Platte-Republican CREP and CPNRD.)[7]  Like the MOA for the Central Basins CREP, the MOA for the Platte-Republican CREP states that USDA will "[s]hare appropriate data" with the State in accordance with the FOIA and other applicable laws "to facilitate State monitoring efforts."  (Defs.' Index, filing 23, Ex. M, at AR000200.  See also Defs.' Index, filing 23, Wieland Decl. ¶ 37; id., Ex. F, at AR000120.)  This MOA also provides that the State of Nebraska must "enter into, and administer, a separate State Water Use Contract with each participant" in the CREP.  (Defs.' Index, filing 23, Ex. M, at AR000202.  See also Defs.' Index, filing 23, Wieland Decl. ¶ 38; id., Ex. F, at AR000121.)  The State Water Use Contract states, among other things, that the FSA must provide to the Nebraska Department of Natural Resources records "locating the precise acreage to be enrolled."  (Id., Defs.' Index, filing 23, Ex. N, at AR 000215; see also Defs.' Index, filing 23, Wieland Decl. ¶ 38; id., Ex. F, at AR000121.)  FSA acknowledged that the MOAs and the Water Use Contract require it to share data with Nebraska and stated that it "remains committed to providing access to . . . records as outlined in the aforementioned MOA's and Water Use Contract in order for all of the natural resources districts in Nebraska to fully carry out their role as cooperators with CREP."  (Defs.' Index, filing 23, Ex. F, at AR000121.)  It concluded, however, that the terms of those documents "clearly limit disclosing to Nebraska information pertaining to sites enrolled in CREP."  (Id.)  It added, "In contrast, the scope of CPNRD's July 3 and August 19, 2008, FOIA requests seek geospatial farming information for every farm located within CPNRD's jurisdiction regardless of whether the farm has property enrolled in CREP."  (Id.)  It therefore "determined that the . . . requests for FSA to share crop and acreage data are not compatible with the Central Basins and Platte-Republican CREP MOA's and CPNRD's role as cooperator."

---

[7] In addition to the nine different counties mentioned above that fall with the Central Basins and Platte-Republican CREPs, CPNRD also includes land in Custer and Howard Counties that is not a part of either CREP.  (Defs.' Index, filing 23, Wieland Decl. ¶ 39.)

(Id.)[8]  The FSA also rejected CPNRD's claim that routine uses 2 and 21 for data maintained in USDA/FSA-2, Farm Records File (Automated), mandated disclosure of the information.  (Id. at AR000119 n.1.)

On or about December 3, 2009, the USDA and NRCS required CPNRD to execute an "Acknowledgment of Section 1619 Compliance."  (See Pl.'s Index, filing 26, Ex. 25; see also Pl.'s Index, filing 26, Bishop Decl. ¶ 19.)  The Acknowledgment states that CPNRD is a "NRCS Conservation Cooperator" because it "assists NRCS in the delivery of conservation-related services . . . or with monitoring, assessing, or evaluating of conservation benefits from USDA conservation programs under a Cooperative Working Agreement and [a] Memorandum of Understanding."  (See Pl.'s Index, filing 26, Ex. 25, at AR000628.  See also id. at AR000629 ("[CPNRD] is a 'contractor or cooperator of USDA within the meaning of Section 1619.").)  It adds, generally speaking, that because CPNRD is a cooperator, it must therefore "agree to abide by certain limitations concerning the use of information CPNRD receives under Section 1619(b)(3) of the 2008 Farm Bill."  (Pl.'s Index, filing 26, Bishop Decl. ¶ 19.)  Among other things, the Acknowledgment states, "[P]rotected information [that CPNRD is authorized to access] must be strictly limited to only that information necessary for [CPNRD] to provide conservation related services," "The Conservation Cooperator will use the protected information only to perform work that is directly connected to provide conservation related services," and "Use of the protected information to perform work that is not directly connected to provide conservation related services is expressly prohibited." (See Pl.'s Index, filing 26, Ex. 25, at AR000628-629.)

On January 11, 2010, CPNRD filed a four-count amended complaint against USDA and FSA.  (See generally filing 17.)  Count I alleges that the defendants' refusal to release the GIS data requested by CPNRD violates the FOIA, 5 U.S.C. § 552.  (See Am. Compl., filing 17, ¶ 39.)  Count

---

[8] I note in passing that the administrative record includes six other agreements that CPNRD submitted in support of its appeal.  (See Defs.' Index, filing 23, Ex. D at AR000049-107.)  In addition to these, the plaintiff has submitted in opposition to the defendants' motion nine more agreements that were not a part of the administrative record considered by the FSA. (Compare Defs.' Index, filing 23, Ex. D at AR000049-107 with Pl.'s Index, filing 26, Bishop Decl. ¶ 5C-F, H-J, L, N and Exs. 3-6, 8-10, 12, 14.)  The significance of these agreements will be addressed below; their terms need not be summarized here.

10

II alleges that the defendants' refusal to release the data violates certain sections of the APA–specifically, 5 U.S.C. § 706(1), or, in the alternative, 5 U.S.C. §§ 706(2)(a) and (d).  (See Am. Compl., filing 17, ¶¶ 42-43.)  Count III alleges that the defendants' refusal to release the data pursuant to routine uses 2 and 21 violates the Privacy Act, 5 U.S.C. § 552a.  (See Am. Compl., filing 17, ¶¶ 45-46.)  Count IV alleges that the defendants' "failure to release the GIS Data under Routine Use Nos. 2 or 21" violates the APA, 5 U.S.C. § 706(1), or alternately 5 U.S.C. § 706(2)(a) and (d). (See Am. Compl., filing 17, ¶¶ 48-49.)

On February 12, 2010, the defendants filed an answer to the amended complaint.  (See filing 21.)  Thereafter, on April 14, 2010, the defendants moved to dismiss the plaintiff's APA and Privacy Act claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and moved for summary judgment on the plaintiff's FOIA claim.  (Filing 22; filing 24 at 2.)  In its response to the defendants' motion, the plaintiff states that it has decided to abandon its second cause of action.  (See filing 25 at 1 n.1.)  It remains to be determined whether the defendants' motion ought to be granted or denied insofar as Counts I, III, and IV of the amended complaint are concerned.

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss

The defendants' motion to dismiss is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (See filing 22.)  Rule 12(b) motions cannot be made after a party has filed a responsive pleading, however, and in this case the defendants filed an answer to the amended complaint before they filed the instant motion.  (See Answer to Am. Compl., filing 21 (filed on February 12, 2010); Mot. to Dismiss & for Summ. J., filing 22 (filed on April 14, 2010).)  See also Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  The plaintiff submits that the defendants' motion to dismiss should be denied because it is untimely.  (See filing 25 at 17.)  It also acknowledges, however, that when I was recently confronted with similar circumstances, I "consider[ed] the . . . motion as if it were based on Rules 12(h)(3) and 12(c), as opposed to Rules 12(b)(1) and 12(b)(6)."  Brown v. Grandmother's, Inc., No. 4:09CV3088, 2010 WL 611002, at *3 (D. Neb. Feb. 17, 2010).  (See also filing 25 at 17 (citing Brown, 2010 WL 611002, at *3).)  For the reasons I explained in Brown, I

11

shall proceed to analyze the defendants' motion as if it were brought pursuant to Rules 12(h)(3) and 12(c), using the same standards applicable to motions brought pursuant to Rules 12(b)(1) and 12(b)(6). Brown, 2010 WL 611002, at *3-4.

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). The rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Although the court must take the plaintiff's factual allegations as true when considering a Rule 12(b)(6) motion to dismiss, "[a] pleading that offers 'labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

 "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557); see also Dubinsky v. Mermart, LLC, 595 F.3d 812, 815 (8th Cir. 2010) ("We must take all facts alleged in the complaint as true, but 'threadbare' assertions of a cause of action are insufficient."). Thus, to satisfy Rule 8 and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. See,

12

e.g., Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): I must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and I must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley, 509 F.3d at 521 (citations omitted). In a factual attack, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Furthermore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. at 593 n.1 (quoting Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977)). "[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist." Id. (quoting Mortensen, 549 F.2d at 891). See also Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (Citations omitted)).

Although the parties have submitted evidence in support of their respective briefs, this evidence pertains to the defendants' summary judgment motion. The defendants' motion to dismiss raises a facial challenge to subject matter jurisdiction, and therefore I will analyze their 12(b)(1) motion using the same standards that apply to a Rule 12(b)(6) motion.

## B.   Motion for Summary Judgment

A motion for summary judgment shall be granted by the court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken

13

in the light most favorable to the nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III.   ANALYSIS

#### A.   Motion to Dismiss Count III (Privacy Act)

The defendants argue that Count III must be dismissed because the plaintiff lacks standing to sue under the Privacy Act, or, in the alternative, because the complaint fails to state a viable claim under the Privacy Act.  I agree with the defendants.

The Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."  Doe v. Chao, 540 U.S. 614, 618 (2004).  The Act states in subsection (b), "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or under the prior written consent of, the individual to whom the record pertains," subject to certain exceptions.  5 U.S.C. § 552a(b).  "Subsection (g)(1) recognizes a civil action for agency misconduct fitting within any of four categories . . . and then makes separate provision for the redress of each."  Chao, 540 U.S. at 618 (citation omitted).  The right to bring such an action is granted to an "individual," 5 U.S.C. § 552a(g)(1), and the term "individual" is defined as "a citizen of the United States or an alien lawfully admitted for permanent residence," 5 U.S.C. § 552a(a)(2).  The plaintiff is a political subdivision of the State of Nebraska, (see Am. Compl., filing 17, ¶ 5), and, as such, it is not an "individual" within the meaning of the Privacy Act.  The plaintiff therefore lacks standing to sue under the Act, and I find that Count III must be dismissed for lack of subject matter jurisdiction.  Cf. Cell Associates, Inc. v. National Institutes of Health, Dept. of Health, Education

14

& Welfare, 579 F.2d 1155, 1157 (9th Cir. 1978) (dismissing Cell Associates as a plaintiff for lack of standing because it is not an "individual" within the meaning of the Privacy Act).

Furthermore, I agree with the defendants that section (g)(1) of the Privacy Act only authorizes civil actions that fit within one of four categories, and the amended complaint fails to state a claim under any of these categories. "The first two categories cover deficient management of records: subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record, and subsection (g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him." Doe v. Chao, 540 U.S. 614, 618 (2004). "The two remaining categories deal with derelictions having consequences beyond the statutory violations per se. Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination 'adverse' to that person. Subsection (g)(1)(D) speaks of a violation when someone suffers an 'adverse effect' from any other failure to hew to the terms of the Act." Id. at 619. In Count III, the plaintiff alleges that the defendants' failure to provide it with data about various farms in specific Nebraska counties violates the Privacy Act. Clearly, these allegations do not state a claim that falls within the scope of subsections (g)(1)(A) (refusal to amend record) or (g)(1)(C) (failure to maintain record that results in an adverse determination). Also, because "a Privacy Act plaintiff must assert his own legal right under the Act and not the rights of others," Sirmans v. Caldera, 27 F. Supp 2d 248, 250 (D.D.C. 1998), Count III does not state a claim that falls within subsections (g)(1)(B) (failure to comply with an individual's request to gain access to records about him) or (g)(1)(D) (failure to comply with the Privacy Act that causes an individual to suffer an adverse effect). Thus, Count III fails to state a claim upon which relief may be granted under the Privacy Act.

In opposition to the defendants' motion to dismiss Count III, the plaintiff argues that routine use exceptions 2 and 21 grant the plaintiff a right to receive the information it seeks, and it is fundamental that "agencies are bound to follow their own regulations." (Filing 25 at 19-20 (quoting Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004).) It is true that the Privacy Act allows records to be disclosed "for a routine use." 5 U.S.C. § 552a(b)(3). It does not follow, however, that because § 552a(b)(3) permits disclosure, a third party can file a civil suit under the Privacy Act to compel an agency to disclose records about an individual. The plaintiff offers no

15

authority in support of its argument that such a claim is available–and as I explained above, no such cause of action is authorized in § 552a(g)(1). I am persuaded that Count III must be dismissed.

### B. Motion to Dismiss Count IV (Administrative Procedure Act)

The defendants argue that Count IV must be dismissed because the FOIA affords the plaintiff an alternate, adequate remedy for the defendants' allegedly wrongful decision to deny access to the records. (See filing 24 at 16-17.) I find that the defendants are correct, and Count IV must be dismissed.

In Count IV of the amended complaint, the plaintiff alleges that the defendants' failure to release GIS Data to the plaintiff violated the APA. (See Am. Compl., filing 17, ¶¶ 47-49.) By way of remedy, the plaintiff seeks: 1) a declaration that the defendants violated the APA and other statutes, 2) "a specific finding that the actions of the agency were so flagrant as to warrant referral to the Merit System Protection Board for investigation pursuant to 5 U.S.C. § 552(a)(4)(F)," 3) an order directing the defendants to release the GIS Data, and 4) an award of costs and attorney fees. (See Am. Compl, filing 17, at 10.) Setting aside the plaintiff's demand for a declaration that the defendants have violated various other laws, all of the substantive remedies sought by the plaintiff are available under the FOIA. See 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant."); id. § 552(a)(4)(E) ("The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."); id. § 552(a)(4)(F)(i) (providing for investigation of an arbitrary or capricious withholding of agency records).

"[T]he APA by its terms independently authorizes review [of an agency action] only when 'there is no other adequate remedy in a court.'" Bennet v. Spear, 520 U.S. 154, 161-62 (1997) (quoting 5 U.S.C. § 704). Although the APA's review provisions are to be interpreted generously, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988). Because the FOIA affords the plaintiff adequate remedies in this court, its APA claim must be dismissed. See Walsh v. United States Dept. of Veterans Affairs, 400 F.3d 535, 537-38 (7th Cir. 2005); Columbia

Riverkeeper v. Federal Energy Regulatory Comm'n, 650 F. Supp. 2d 1121, 1126 (D. Or. 2009); Lion Raisins, Inc. v. United States Dept. of Agriculture, 636 F. Supp. 2d 1081, 1114-15 (E.D. Cal. 2009); Kenney v. United States Dept. of Justice, 603 F. Supp. 2d 184, 190 (D.D.C. 2009); People for the American Way Foundation v. National Park Service, 503 F. Supp. 2d 284, 308-09 (D.D.C. 2007); Edmonds Institute v. United States Dept. of Interior, 383 F. Supp. 2d 105, 111-12 (D.D.C. 2005); Sierra Club v. United States Dept. of Interior, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).

In response to the defendants' motion, the plaintiff argues that the defendants "have not sought clearly to dismiss CPNRD's Fourth Cause of Action." (Filing 25 at 21.) The plaintiff is incorrect. Indeed, the defendants' motion to dismiss includes language quoted from, and a specific citation to, the plaintiff's allegations in Count IV. (See filing 24 at 16 (quoting Am. Compl., filing 17, ¶ 49).)

The plaintiff also argues that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," and "[t]he only exception is where review is specifically prohibited by statute or the agency's action is committed to agency discretion as a matter of law." (Filing 25 at 21 (citing 5 U.S.C. § 702; Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1572 (10th Cir. 1994)).) The plaintiff's argument is accurate insofar as it goes, but the defendants have not argued that the plaintiff should be denied all judicial review of its claim that the defendants wrongfully refused to disclose the GIS data. Rather, they argue only that where, as here, the FOIA provides the plaintiff a cause of action and an adequate remedy, the APA does not afford the plaintiff an independent, alternate cause of action. The plaintiff does not dispute that the FOIA provides it with an adequate, alternate remedy. Count IV will therefore be dismissed.

**C.   Motion for Summary Judgment on Count I (Freedom of Information Act)**

The defendants argue that they are entitled to summary judgment on plaintiff's FOIA claim because section 1619(b)(2) of the 2008 Farm Bill prohibits disclosure of the GIS data sought by the plaintiff. I agree. There is no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law on the plaintiff's FOIA claim.

"The mandate of the FOIA calls for broad disclosure of Government records." C.I.A. v. Sims, 471 U.S. 159, 166 (1985). "Congress recognized, however, that public disclosure is not

always in the public interest and thus provided that agency records may be withheld from disclosure under any of the nine exemptions defined in 5 U.S.C. § 552(b)." Id. at 166-67. These exemptions are narrowly construed, and it is the agency's burden to establish that one of these exemptions applies. E.g. John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). See also 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").

The defendants denied the plaintiff's request for GIS data pursuant to Exemption 3. (See Defs.' Index, filing 23, Ex. C, at AR000026; id., Ex. F, at AR000117-120.) "Under Exemption 3 disclosure need not be made as to information 'specifically exempted from disclosure by statute' if the statute affords the agency no discretion on disclosure, establishes particular criteria for withholding the information, or refers to the particular types of material to be withheld." Sims, 471 U.S. at 167 (citations omitted). See also 5 U.S.C. § 552(b)(3)(A). When determining whether FOIA Exemption 3 applies, the court must first determine whether the statute relied upon by the agency is a "withholding statute" within the meaning of Exemption 3. See Zanoni v. United States Dept. of Agriculture, 605 F. Supp. 2d 230, 236 (D.D.C. 2009). It must then determine "whether the information sought after falls within the boundaries of the non-disclosure statute." Ass'n of Retired R.R. Workers, Inc. v. United States R.R. Retirement Bd., 830 F.2d 331, 332 (D.C. Cir. 1987) (quoting Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979)). See also C.I.A. v. Sims, 471 U.S. 159, 167 (1985) ("The question . . . is twofold: first, does § 102(d)(3) of the National Security Act of 1947 constitute a statutory exemption to disclosure within the meaning of Exemption 3; and second, are the MKULTRA researchers included within § 102(d)(3)'s protection of 'intelligence sources.'"); Baldrige v. Shapiro, 455 U.S. 345, 359 (1982) ("Because §§ 8(b) and 9(a) of the Census Act constitute withholding statutes under Exemption 3 of the FOIA and because the raw census data in this case was intended to be protected from disclosure within those provisions of the Census Act, the requested information is not subject to disclosure under the FOIA.").

In the instant case, the withholding statute relied upon by the defendants is section 1619(b)(2) of the 2008 Farm Bill, 7 U.S.C. § 8791(b)(2). (See Defs.' Index, filing 23, Ex. C, at AR000026; id., Ex. F, at AR000117-120.) Section 1619(b)(2) states that, subject to certain exceptions, the following information shall not be disclosed: "(A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the

18

land itself, in order to participate in programs of the Department [of Agriculture]; or (B) geospatial information otherwise maintained by the Secretary about agricultural land or operations for which information described in subparagraph (A) is provided."   7 U.S.C. § 8791(b)(2)(A)-(B).   The plaintiff concedes that section 1619(b)(2) specifically exempts records from disclosure and is therefore a "withholding statute" within the meaning of FOIA Exemption 3.   (See filing 25 at 25 (citing Zanoni, 605 F. Supp. 2d at 236).)   Furthermore, the plaintiff does not argue that the GIS data it seeks falls outside the coverage of section 1619(b)(2).   Instead, the plaintiff "maintains [it] is qualified to receive the GIS Data sought under the exceptions to Section 1619 that allow a cooperator to receive GIS Data otherwise precluded by Section 1619's general prohibition on disclosure." (Filing 25 at 25.)   Specifically, the plaintiff argues that it is entitled to receive the data pursuant to section 1619(b)(3)(A)(i), which states,

> If the Secretary [of Agriculture] determines that the information described in paragraph (2) will not be subsequently disclosed except in accordance with paragraph (4), the Secretary may release or disclose the information to a person or Federal, State, local, or tribal agency working in cooperation with the Secretary in any Department program . . . when providing technical or financial assistance with respect to the agricultural operation, agricultural land, or farming or conservation practices . . . .

7 U.S.C. § 8791(b)(3)(A)(i).

The plaintiff's argument raises a question about the scope of my review of the defendants' decision.   A court's review of an agency's decision to deny a FOIA request is de novo, and, as I noted above, "the agency bears the burden of proving that the requested information falls within a FOIA exemption."   Zanoni, 605 F. Supp. 2d at 236.   See also 5 U.S.C. § 552(a)(4)(B).   In this case, however, there is no dispute that an Exemption 3 withholding statute specifically prohibits the disclosure of the requested information.   As the defendants correctly note in their reply to the plaintiff's argument, (see filing 36 at 14-19), courts have held that under these circumstances, de novo review is complete, and the agency's decision to withhold documents is "entitled to some deference."   Church of Scientology Int'l v. United States Dep't of Justice, 30 F.3d 224, 235 (1st Cir. 1994). See also id. ("[O]nce a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA de novo review normally ends." (quoting Maynard v. C.I.A., 986 F.2d 547, 554 (1st Cir. 1993)); Wilner v. National

19

Security Agency, 592 F.3d 60, 72 (2d Cir. 2009) (quoting Ass'n of Retired R.R. Workers, Inc. v. United States R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)); McDonnell v. United States, 4 F.3d 1227, 1246 (3d. Cir. 1993) ("[T]he sole issues for decision in determining the applicability of Exemption 3 to a particular set of documents are the existence of either type of relevant statute and the inclusion of withheld material within the statute's coverage."); Aronson v. I.R.S., 973 F.2d 962, 967 (1st Cir. 1992) ("[O]nce a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA de novo review normally ends.  Any further review must take place under more deferential, administrative law standards." (citations omitted)); McGrady v. Mabus, 635 F. Supp. 2d 6, 13 (D.D.C. 2009) ("When the government alleges that it may withhold information pursuant to Exemption 3, 'the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage.'").

In Association of Retired Railroad Workers, Inc. v. United States Railroad Retirement Board, 830 F.2d 331 (D.C. Cir. 1987), the Association of Retired Railroad Workers (the Association) filed a FOIA claim with the U.S. Railroad Retirement Board (the Board) for access to the names and addresses of retired railroad workers.  The Board denied this request, holding that the documents were exempt from disclosure under FOIA Exemption 3 and section 12(d) of the Railroad Unemployment Insurance Act (RUIA), 45 U.S.C. § 362(d), which states (in pertinent part),

> Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an employee's identity: Provided, however, That . . . (ii) the Board may disclose such information in cases in which the Board finds that such disclosure is clearly in furtherance of the interest of the employee or his estate . . . .

The Association then filed a complaint in the district court pursuant to 5 U.S.C. § 552(a)(4)(B), seeking production of the records.  The district court applied the two-step procedure set forth in Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979), and concluded that section 12(d) was a withholding statute for the purposes of Exemption 3 and that the information sought by the Association fell squarely within section 12(d).  Based on these conclusions, the district court entered summary judgment in favor of the Board.  On appeal, the Association argued that under § 552(a)(4)(B), the district court was required to review not only whether the information sought fell

within the withholding statute, but also whether "the agency's exercise of discretion" under statutory exception (ii) quoted above "comported with the requirements of the statute."  830 F.2d at 335 (citation omitted).  In other words, the Association argued that "the court must decide de novo whether [the Board] appropriately balanced the benefit and cost of disclosure in this particular case" when it decided not to exercise its discretion to disclose information that must otherwise be withheld under the statute.  Id.  The Court of Appeals for the District of Columbia Circuit rejected the Association's argument and explained, in detail, precisely why "[d]e novo review ends with the finding that the particular matter sought . . . is covered by the statute" when the statute falls within Exemption 3.[9]  The court stated,

> It is quite true that FOIA mandates de novo review by the district court for all nine exemptions.  5 U.S.C. § 552(a)(4)(B).  Yet the scope of the review is not identical in all cases.  Here the district court properly discharged its de novo review obligations by applying the two-step Irons & Sears analysis.  The Supreme Court expressly followed this two-step procedure in recent Exemption 3 cases.  Baldrige v. Shapiro, 455 U.S. 345, 353 (1982) (census data exempt from disclosure because the Census Act is an Exemption 3 withholding statute and the requested data is covered by the terms of the relevant provision); Sims, 471 U.S. at 167-68 (Exemption

---

[9] To be more precise, the court held that "[d]e novo review ends with the finding that the particular matter sought . . . is covered by" a statute classified under the second part of subsection B to Exemption 3, which is now codified at 5 U.S.C. § 552(b)(3)(A)(ii).  Ass'n of Retired R.R. Workers, Inc. v. United States R.R. Retirement Bd., 830 F.2d 331, 335 (D.C. Cir. 1987).  Section 552(b)(3)(A)(ii) states, "This section does not apply to matters that are . . . specifically exempted from disclosure by statute . . . if that statute . . . refers to particular types of matters to be withheld."  The court stated clearly that it was dealing only with a statute that meets this particular classification (which it refers to as the "B-2" classification) and did not decide "the level of de novo review" for statutes that fall within other subsections of Exemption 3.  Id. at 336-37.  Like the withholding statute at issue in Association of Retired Railroad Workers, the statute at issue here–section 1619(b)(2)–"refers to particular types of matters to be withheld," i.e., "information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department; or (B) geospatial information otherwise maintained by the Secretary about agricultural land or operations for which information described in subparagraph (A) is provided."  7 U.S.C. § 8791(b)(2)(A)-(B).  Section 1619(b)(2) may also be properly classified under different subparts of Exemption 3.  See, e.g., Zanoni v. United States Dept. of Agriculture, 605 F. Supp. 2d 230, 236-37 (D.D.C. 2009).  But I find that the D.C. Circuit's analysis of "B-2" statutes is directly applicable to the standard of review question that I must resolve here.

3 analysis complete when the court determines that the names of CIA researchers constituted statutorily protected "intelligence sources and methods."). These precedents establish at a minimum that de novo review in FOIA cases is not everywhere alike and that the two-step analysis is sufficient in at least some Exemption 3 cases.

. . . .

The rationale underlying the Supreme Court's approach, though not explicitly articulated, derives from the fact that Exemption 3 presents considerations distinct and apart from the other eight exemptions. This much we explained in [Goland v. C.I.A., 607 F.2d 339, 350 (D.C. Cir. 1978)]: "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." The required scope of review is further narrowed in the case of statutes falling within B-2 because the congressional intent to withhold is made manifest in the withholding statute itself. In effect, the purpose of Exemption 3–to assure that Congress, not the agency, makes the basic nondisclosure decision–is met once B-2 is found to apply. Hence the policing role assigned to the courts in a B-2 case is reduced.

This point is brought out yet more clearly by a specific analysis of section 12(d) of RUIA. There is a fundamental difference in the context of FOIA between the exercise of agency discretion to withhold information that will otherwise be available to the public and the exercise of discretion to disclose information that must otherwise be withheld. The public has a clear interest in statutory procedures that will ensure the propriety of any withholding of information but not in challenging the propriety of its release. The only parties with a direct interest in the latter are those who may be injured by an improper disclosure, and they do not rely on FOIA de novo review in order to protect their rights to privacy. In the instant case, we find that de novo review is satisfied by the Irons & Sears framework because section 12(d) of RUIA is written to permit disclosure of otherwise non-disclosable material. All B-2 statutes may be so covered, but we have no need to rule so broadly.

830 F.2d at 335-36 (citations omitted).

The court's analysis is persuasive, and it is directly applicable to the case now before me. Like section 12(d) of the RUIA, section 1619(b)(2) of the 2008 Farm Bill represents a "basic nondisclosure decision" made by Congress. 830 F.2d at 336. More specifically, and as noted above, section 1619(b)(2) prevents the Department of Agriculture from disclosing "(A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs

of the Department; or (B) geospatial information otherwise maintained by the Secretary about agricultural land or operations for which information described in subparagraph (A) is provided." 7 U.S.C. § 8791(b)(2)(A)-(B).  It is undisputed that section 1619(b)(2) is a withholding statute within the meaning of Exemption 3 and that the GIS data sought by the plaintiff falls within this statute. At this point, because there is no dispute that the withholding statute applies, de novo review ends for the reasons explained in Association of Retired Railroad Workers: "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  830 F.2d at 336 (quoting Goland v. C.I.A., 607 F.2d 339, 350 (D.C. Cir. 1978)).  See also 5 U.S.C. § 552(b)(3)(A)(ii) (stating that the FOIA does not apply when the information sought is "specifically exempted from disclosure by [a] statute" that "refers to particular types of matters to be withheld").

Also as in Association of Retired Railroad Workers, the plaintiff here attempts to extend this court's de novo review to the defendants' decision not to apply a discretionary exception to the withholding statute.  I shall not do so.  Section 1619(b)(3)(A)(i), like section 12(d) of RUIA, gives the defendants the discretion to disclose information that is otherwise non-disclosable under the statute if they find that certain conditions are satisfied.   As the court noted in Association of Retired Railroad Workers, "the exercise of discretion to disclose information that must otherwise be withheld" pursuant to a statute is fundamentally distinct from the "exercise of agency discretion to withhold information that will otherwise be available to the public," 830 F.2d at 336, and the former is beyond the scope of the FOIA where, as here, the information sought is "specifically exempted for disclosure" by a statute that "refers to particular types of matters to be withheld," see 5 U.S.C. § 552(b)(3).   Cf. Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 121 (1980) (rejecting argument that agency was required to comply with FOIA time limitations and explaining that the FOIA does not apply to matters that fall within Exemption 3).  I find that de novo review of the defendants' exercise of discretion to disclose (or not to disclose) matters under section 1619(b)(3)(A)(i) is not available under the FOIA.

In summary, section 1619(b)(2) of the 2008 Farm Bill prohibits the defendants from disclosing A) certain information provided by agricultural producers or owners in order to participate in USDA programs, and B) geospatial information about those producers' or owners' agricultural

23

land or operations.  7 U.S.C. § 8791(b)(2)(A)-(B).  Thus, it is a statute that defines "particular types of matters to be withheld" within the meaning of FOIA Exemption 3.  5 U.S.C. § 552(b)(3)(A)(ii).  Furthermore, the GIS data sought by the plaintiff falls squarely within the category of information prohibited from disclosure under section 1619(b)(2).[10]  The FOIA does not apply to the information sought by the plaintiff, and the de novo review required under 5 U.S.C. § 552(a)(4)(B) ends here.

A review of the defendants' decision not to disclose the GIS data under section 1619(b)(3)(A)(i) must "take place under more deferential . . . administrative law standards."  Aronson v. I.R.S., 973 F.2d 962, 967 (1st Cir. 1992).  See also id. at 965-67 (explaining why, in Exemption 3 cases, ordinary administrative law principles of review apply to an agency's decision not to invoke an exception to a withholding statute).  Because section 1619(b)(3)(A)(i) gives the defendants the discretion to make a determination whether the data should be disclosed, it is the plaintiff's burden to prove that the defendants' decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  See id. at 965.  See also, e.g. Siebrasse v. United States Dep't of Agriculture, 418 F.3d 847, 851 (8th Cir. 2005); Mausolf v. Babbitt, 125 F.3d 661, 667 (8th Cir. 1997); 5 U.S.C. § 706(2)(A).  The plaintiff has not attempted to make such a showing in opposition to the defendants' summary judgment motion.  (See generally filing 25.)  The arguments it does raise merit brief discussion, however.

First, the plaintiff claims that it "is entitled to the [GIS data] if it cooperates in 'any' USDA program in which CPNRD is providing 'technical or financial assistance with respect to' a specific agricultural operation, agricultural land in general, or farming or conservation practices in general."  (Filing 25 at 25-26.)  In other words, it claims that because it is a "cooperator" within the meaning of section 1619(b)(3) of the 2008 Farm Bill, it is entitled to receive the data under that section–even if the data bear no connection whatsoever to the services CPNRD performs as a cooperator.[11]  I find,

---

[10] As all of the requested information falls within the prohibited category, segregability is not an issue.  See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

[11] Indeed, the plaintiff has not attempted to show that the GIS data will be used solely in its cooperative activities with the USDA and its agencies, and has argued instead that the use it intends to make of the data "is irrelevant as a matter of law."  (Filing 25 at 28.)

however, that the plaintiff's construction of section 1619(b)(3) is contrary to the plain language of the statute, which clearly limits authorized disclosures to cooperators who are "providing technical or financial assistance" in connection with the very same "agricultural operation, farming or conservation practices, or the land" that the sought-after information concerns.  See 7 U.S.C. § 8791(b)(2)(A), (b)(3)(A)(i).  The plaintiff's construction is also implausible.  As the defendants correctly note, the plaintiff's reading of the statute means that a party "can provide financial assistance to the agricultural operation of 'Farmer A' in Buffalo County, Nebraska, through the CREP program," and thereby become "entitled to receive information on the agricultural operations of 'Farmer B' in Dawson County, Nebraska, even though [that party] provided no financial or technical assistance to Farmer B's agricultural operations through a USDA program."  (Filing 24 at 31.)  The statute does not permit such a liberal release of protected information to cooperators.[12]

The plaintiff also argues that the defendants are not entitled to summary judgment unless they can show "that CPNRD does not qualify as a cooperator on each parcel for which CPNRD seeks the GIS Data." (Filing 25 at 27.)  This is so, according to the plaintiff, because the defendants "bear the burden of demonstrating application of FOIA Exemption 3 to the subject matter of CPNRD's FOIA request." (Id. (citing 5 U.S.C. § 552(a)(4)(B).)  Relatedly, the plaintiff argues that the defendants' motion for summary judgment must be denied because "there remains a genuine issue of material fact concerning the scope of CPNRD' cooperation." (Id. at 28.)  The plaintiff submits that because the defendants "have identified and addressed only a limited subset of CPNRD's myriad cooperative efforts and have failed to acknowledge the breadth and scope of CPNRD's partnerships with USDA agencies, including FSA," it cannot be said that the GIS data were properly withheld under Exemption 3. (Id.)

As I have explained, however, the defendants satisfied their burden by showing that section

---

[12] I note parenthetically that the plaintiff's evidentiary materials include a document indicating that CPNRD agreed to be bound by limits on its access to, and use of, information it might receive under section 1619(b)(3). (Pl.'s Index, filing 26, Bishop Decl. ¶ 19; id., Ex. 25, at AR000628-629.  See also supra Part I (discussing the "Acknowledgment of Section 1619 Compliance").)  The plaintiff's argument that it is entitled to receive and use information that does not relate to its cooperative efforts seems to conflict with the limitations set forth in this document.

1619(b)(2) is an Exemption 3 withholding statute and that the information sought by the plaintiff is specifically prohibited from disclosure by that statute. The plaintiff would extend the defendants' burden and require them to prove that they properly exercised their discretion under section 1619(b)(3)(A)(i), despite the applicability of Exemption 3. I am not persuaded that such an extension would be consistent with the plain language of the FOIA–particularly 5 U.S.C. §§ 552(a)(4)(B) and (b)(3)(A). Instead, it is the plaintiff's burden to show that the defendants acted arbitrarily or capriciously by declining to exercise their discretion to disclose information that falls within the coverage of the withholding statute.

Furthermore, I am not persuaded that the evidence the plaintiff has submitted in opposition to the defendants' summary judgment motion raises a material issue about the scope of its cooperation with the defendants. First, many of the exhibits provided by the plaintiff were not included in the administrative record.[13] "It is a basic principle of administrative law that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based." Robinette v. Commissioner of I.R.S., 439 F.3d 455, 459 (8th Cir. 2006). "In reviewing agency action under the 'abuse of discretion' standard . . . 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" Id. Setting that aside, it seems to me that the scope of the plaintiff's cooperative efforts with the defendants is only material insofar as it serves to show that the plaintiff is seeking the GIS data in order to complete its obligations as a cooperator. The plaintiff claims, however, that the use it intends to make of the GIS data is irrelevant: it has not argued that it lacks access to information or documents necessary to complete its obligations as a cooperator, nor has it shown that the information it seeks in its FOIA request is necessary to its efforts under any of the particular cooperative agreements it cites.[14] I agree with the defendants that

---

[13] I note in passing that the plaintiff numbered its exhibits using the designation "AR000___," giving them the misleading appearance that they were part of the administrative record. (See, e.g., filing 26, Wilmoth Decl. at 1 (dated May 17, 2010).)

[14] On page 30 of its response brief, the plaintiff offers the conclusory argument that "it should be clear from the Bishop Declaration that CPNRD intends to use the GIS Data to further multiple conservation programs, many of which are carried out in cooperation with USDA and its agencies." (Filing 25 at 30 (emphasis added).) It adds that "nearly all of [its conservation

the question "[w]hether Plaintiff cooperated with Defendants on two programs or fifteen is immaterial to the issue before the Court" if the nexus between the cooperative efforts and the usage of the data is disregarded.  (Filing 36 at 14.)  Finally, I note that the plaintiff's response brief and its supporting materials do not clearly define the extent of the plaintiff's cooperative efforts.  Indeed, the plaintiff does not indicate which of the cooperative agreements it has submitted are currently in effect.  (See Pl.'s Index, Ex. 26, Bishop Decl. ¶ 6 (stating that some of the agreements "have expired on their face").)  Essentially, the plaintiff claims it should be given the GIS data it seeks because the scope of its cooperation is ambiguous.  The plaintiff's cooperative efforts might indeed be broader than the defendants acknowledged in denying the plaintiff's FOIA request, but a party cannot raise a genuine issue for trial solely by inviting speculation that its claim might have a basis in fact.  See, e.g., Howard v. Columbia Public School Dist., 363 F.3d 797, 800 (8th Cir. 2004) ("Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact.").  In summary, I am not persuaded that there remains a genuine, material dispute about the extent of CPNRD's cooperative efforts that, if resolved in the plaintiff's favor, could support a reasonable finding that the defendants acted arbitrarily or capriciously in declining to exercise their discretion under section 1619(b)(3)(A)(i).

Finally, the plaintiffs argue that section 1619(b)(2) should not be applied in this case because the plaintiff made a request for the GIS data in late 2005, and this previous request led to a April 2007 determination that the plaintiff should be given access to a portion of the data it seeks.  (See Pl.'s Index, filing 26, Bishop Decl., ¶¶ 20-31 and Ex. 19).  It is true that the prior proceedings predated the passage of section 1619 of the 2008 Farm Bill; however, I am obligated to apply the statute, in its current form, to the agency decision now before me.  See Zanoni v. U.S. Dep't of Agriculture, 605 F. Supp. 2d 230, 238 (D.D.C. 2009) (citing Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974)).

---

programs] are conducted in some measure with USDA partners."  (Id. (emphasis added).)  These statements are inherently ambiguous insofar as the connection between the data sought and CPNRD's cooperative efforts is concerned.  Moreover, they are not accompanied by citations to any specific portion of the record that might substantiate them.

The defendants have shown that 7 U.S.C. § 8791(b)(2) is a withholding statute under 5 U.S.C. § 552(b)(3)(A)(ii) and that the GIS data sought by the plaintiff are prohibited from disclosure under that statute.  Therefore, the FOIA does not apply to the GIS data.  Although 7 U.S.C. § 8791(b)(3)(A)(i) affords the defendants the discretion to disclose the data to cooperators when they are providing technical or financial assistance with respect to the land, operation, or practices covered by that data, the plaintiff has failed to raise any genuine issue as to whether the defendants acted arbitrarily or capriciously in their refusal to exercise that discretion.  I find, therefore, that the defendants are entitled to summary judgment on Count I.

### D.   Groundwater Management Districts Association's Amicus Brief

The Groundwater Management Districts Association (GMDA) has filed an amicus brief in opposition to the defendants' motion.  (See filing 38).  GMDA "is composed of local groundwater management districts in several Midwestern and Southern states," and, like the plaintiff, one of its members "has experienced similar denial of access to GIS data." (Id. at 1-2.)  GMDA states that GIS data "is a matter of national significance to GMDA and its members" and other governmental entities who "routinely use GIS technology and data for purposes directly related to and in furtherance of their cooperative relationship with Defendants USDA and FSA," and it has resolved to "pursue through all available legal avenues the release by FSA of digitally stored data . . . in GIS format."  (Id. at 2-3.)

In opposition to the defendants' motion, GMDA argues that the defendants' interpretation of section 1619 of the 2008 Farm Bill is "unduly restrictive, narrow and erroneous."  (Filing 38 at 3.)  It submits that GMDA members who qualify as "cooperators" should not be denied access to GIS data.  (Id.)  As I have explained above, however, sections 1619(b)(2) and (3)(A)(i) do not, by their plain terms, give the defendants the discretion to disclose the relevant data to any cooperator; rather they grant the defendants the discretion to disclose the data to cooperators when they are providing technical or financial assistance with respect to the land, operation, or practices covered by that data.  Status as a "cooperator," standing alone, is insufficient even to trigger the defendants' discretion to disclose.

GMDA also argues that the plaintiff is entitled to the GIS data "under the Routine Use provision of the Privacy Act"–specifically, routine use exceptions 2 and 21.  (Filing 38 at 4-5.)  For

reasons I have already explained, (see supra Part III.A), I must reject this argument.

Next, GMDA asks that I review the history of a "similar request for digitally stored data" that was made by "YMD Joint Water Management District, a member of GMDA," in early 2007. (Filing 38 at 5-8.) In particular, it suggests that I study Multi Ag Media LLC v. Department of Agriculture, 515 F.3d 1224 (D.C. Cir. 2008), which, it claims, "was fully supportive of YMD's similar request," (filing 38 at 7). In Multi Ag Media, a "commercial vendor of agricultural data" made FOIA requests for agricultural databases–including a GIS database–maintained by the USDA. 515 F.3d at 1226. The USDA withheld some of the requested information pursuant to FOIA Exemption 6, "which protects individual privacy interests in government records." Id. See also 5 U.S.C. § 552(b)(6) ("This section does not apply to matters that are . . . personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."). The court of appeals held that, although the databases were "similar files" covered by Exemption 6, their release "would not 'constitute a clearly unwarranted invasion of personal privacy,'" and therefore the USDA could not properly withhold them under Exemption 6. 515 F.3d at 1233. Multi Ag Media predates the passage of section 1619 of the 2008 Farm Bill, and it does not involve the applicability of Exemption 3 to a request for GIS data. Neither Multi Ag Media nor the history of YMD's unsuccessful request for data persuade me that the defendants' summary judgment motion ought to be denied.

Finally, GMDA argues that the plaintiff should be granted access to the GIS data to promote "[s]ubstantial savings and efficiency" in federal, state, and local levels of government. (Filing 38 at 8-9.) Even if I assume that the disclosure of the data would lead to such benefits, there is no genuine issue as to whether the defendants relied improperly on Exemption 3 or acted arbitrarily or capriciously in exercising their discretion under section 1619(b)(3)(A)(i).

**IT IS THEREFORE ORDERED** that:

1.      the defendants' motion to dismiss and motion for summary judgment, filing 22, is
        granted; and

2.      the plaintiff's request for oral argument and an evidentiary hearing, filing 25, is denied.

Dated September 8, 2010.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge